STATE EX REL. TRI-STATE TELEPHONE & TELEGRAPH
COMPANY v. FRANK OSCAR HOLM.[1]

November 9, 1917.

No. 20,536.

**Telephone franchise — surrender to village of Litchfield.**

> Chapter 152, Laws 1915, placed all telephone companies doing business in this state under the supervision and control of the Railroad and Warehouse Commission, and any telephone company, holding a franchise from a municipality at the time the law took effect, is permitted by section 15 thereof to surrender such franchise and receive, in lieu thereof, from the commission an indeterminate permit to occupy the streets of the municipality with its poles and wires. It is *held* that no private proprietary right, vested in the village of Litchfield by the franchise issued by its council in 1905, was impaired or affected by the written declaration of surrender tendered by relator to the village clerk for filing pursuant to said section 15.

Upon the relation of Tri-State Telephone & Telegraph Company the district court for Meeker county granted its alternative writ of mandamus directing Frank Oscar Holm, as village clerk of the village of Litchfield, to accept and file in his office the declaration or surrender of franchise and sign the proposed certificate or some other certificate complying with the provisions of section 15, chapter 152, Laws 1915, and file the same with the Railroad and Warehouse Commission. The matter was heard before Qvale, J., who quashed the writ. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed.

*Harlan P. Roberts* and *Luke K. Sexton,* for relator.

*Lyndon A. Smith,* Attorney General, and *James E. Markham,* Assistant Attorney General, filed a brief and argument as amici curiae.

*Alva R. Hunt,* for respondent.

HOLT, J.

Proceeding in mandamus. By chapter 152, p. 208, Laws 1915, the

[1]Reported in 164 N. W. 989.

legislature undertook to place all telephone companies, doing business in this state, under the supervision and control of the state Railroad and Warehouse Commission, vesting that body with the same jurisdiction, control and supervisory power over telephone companies as it already had over railroad and express companies. The acts prescribing the power and duties of the commission in respect to railroads and express companies are made to apply to telephone companies. The commission is given the exclusive right to grant authority to any telephone company to construct telephone lines in any municipality of the state and to prescribe the terms and conditions upon which construction may be carried on. But the governing body of the municipality is to retain the same powers of regulation which it had previous to this enactment in respect to the location of poles and wires so as to prevent any interference with the safe and convenient use of the streets by the public. Section 15 thereof, the one attacked in this appeal, reads:

"Any telephone company operating under any existing license, permit or franchise or which shall hereafter before the taking effect of this act, acquire any license, permit or franchise, may, upon filing with the clerk of the municipality which granted such franchise a written declaration that it surrenders such license, permit or franchise, receive in lieu thereof an indeterminate permit as defined in this act; and such telephone company shall thereafter hold such permit under all the terms, conditions and limitations of this act. The filing of such declaration shall be deemed a waiver by such telephone company of the right to insist upon the fulfilment by any municipality of any contract theretofore entered into relating to any rate, charge or service made subject to regulation by this act. Upon filing such written declaration by the telephone company, the clerk of the municipality shall file with the commission a certificate showing that fact and the date thereof, and thereupon it shall receive an indeterminate permit from the commission conferring the same rights as if originally granted under this act."

From the writ and return it appears that in 1905 relator obtained a 13 year franchise or license from the village of Litchfield to occupy such streets and alleys therein as may be necessary for the purpose of maintaining poles, wires and fixtures for a local telephone exchange. Certain conditions are attached to the franchise, respecting the height of the

poles, the placing thereof, the right of the village to string the wires of its fire alarm system thereon, and the fixing of a maximum toll to be charged for telephone service; also, in consideration of the franchise, relator must furnish the village six telephones for use in the public buildings in the village and pay $100 annually into the village treasury. Relator accepted the franchise, installed and operates a local telephone exchange in the village. In July, 1916, relator presented to the respondent, the village clerk, a written declaration duly executed surrendering its franchise, in accordance with the provision of the section above quoted, and requested the clerk to file the same and issue and file the certificate with the commission as therein prescribed. The clerk refused, and this proceeding was instituted. The trial court held that the acceptance of the franchise created a binding contract between the village and relator, whereby the village acquired vested rights which could not be affected or impaired by subsequent legislation; hence the act, insofar as by section 15 it seeks to affect an unexpired franchise, is void and unconstitutional.

The village was created by special act (chapter 27, p. 561, Sp. Laws 1887). The village is empowered to keep the streets free from obstructions, abate nuisances and encroachments thereon, and to care for, supervise and control all public highways, streets and alleys therein. Its council is specifically authorized to grant a franchise or license to persons or corporations to erect telephone wires and poles along streets and alleys. The power or right granted the village to thus license the occupation of the 'streets by telephone companies, was not augmented by the general provision of the charter investing the village with all the powers generally possessed by municipal corporations at common law, for these latter powers are generally understood to be confined to. the five subjects enumerated in 1 Blackstone, Comm. 475; 28 Cyc. pp. 260 and 261. It will be observed that the franchise or license which the council granted, and the only one the council could grant, to relator was confined wholly to an occupation of the public streets by its poles and wires. As caretaker of the public streets the village acts merely as a governmental agency. The legislature can at any time modify, limit or revoke the agency granted the municipality in this respect. By said chapter 152, p. 208, Laws 1915, it took away from the municipalities the power to license the occupation of the streets by telephone companies and placed it exclusively

with the Railroad and Warehouse Commission. However, the regulation of the use of the streets by the companies so as not to interfere with the safety and convenience of the public travel thereon is still retained by the municipalities. If the village acted merely as an agent of the state in granting the franchise to relator, it must be true that the state and relator are the only parties to the contract and can terminate the same by mutual consent as provided in the section quoted, unless the franchise had vested certain private proprietary rights in the village which are protected by the constitutional provision inhibiting the impairment of vested contract rights.

It is quite clear to us that no vested right of the village was impaired or affected by the legislature when it undertook to interfere with the rates established in this franchise. Insofar as rates were therein fixed it was for the benfit of the public. And it is unquestioned that the legislature is supreme when it comes to prescribing or altering the rates which public service corporations may exact from their patrons. As said by Pitney, J.: "The constitutional limitations which prevent the legislature from impairing the obligations of contracts do not debar it from annulling obligations that are due to the public." Cortelyou v. Anderson, 73 N. J. Law, 427, 63 Atl. 1095. The regulation of public utilities is an exercise of the police power of the state and resides with the legislature. Neither can there be any doubt that relator with its local telephone exchange, through which connections and communications may be had with the outside world, comes within the definition of a public service corporation. The main purpose of chapter 152, p. 208, Laws 1915, was to regulate and control telephone companies in respect to service to the public. Insofar as existing municipal franchises related to such services, no good reason suggests itself why the same might not be modified or annulled, at any time, by mutual agreement between the legislature and the companies, as provided in the section above set out, just as readily and lawfully as such franchises could have been changed or terminated by mutual agreement between the municipality and telephone company concerned, had not chapter 152, p. 208, Laws 1915, been enacted.

If the franchise vested any private proprietary rights in the village there can be no impairment or forfeiture thereof. The village insists that such vested rights came to it by the franchise, namely: The free

use of six telephones in its buildings, the privilege to string its fire alarm wires on relator's poles, and the obligation to pay $100 annually into the village treasury.

The alleged private vested right of free telephone service need not be considered, for by section 11 of the act the surrender of the franchise by relator does not operate to cancel or destroy the stipulation to render free telephone service to the village.

The maintenance of fire alarm facilities pertains to one of the governmental functions of a municipality, hence provisions against further needs in that line, in the franchise in question, can scarcely come within the definition of protected private rights of the village. Nor is it clear that relator may be permitted to rid itself of the burden of carrying the village fire alarm wires on its poles, for the Railroad and Warehouse Commission may prescribe the terms and conditions upon which telephone construction may be had in a municipality. (Section 13, chapter 152, p. 211, Laws 1915.)

The only item in the franchise, affected by a surrender certificate, concerning which a claim might reasonably be made that it was a private property right of the village, is the one calling for an annual payment by relator into the village treasury. But when it is considered that this payment was exacted solely for the license to a use of the public streets, in which streets the village possessed no proprietary rights whatsoever, but only those exercised as a governmental agency, the claim vanishes. The title to the yearly payment fell whenever the legislature saw fit to take the control of the streets for the purpose of permitting relator's poles to be set therein from the village council and vest it in another agency.

The principles of law which have guided us to the conclusion reached may be found announced in Merchants Nat. Bank of St. Paul v. East Grand Forks, 94 Minn. 246, 102 N. W. 703; State v. George, 123 Minn. 59, 142 N. W. 945; City of Worcester v. Worcester Consol. St. Ry. Co. 182 Mass. 49, 64 N. E. 581, affirmed in 196 U. S. 539, 25 Sup. Ct. 327, 49 L. ed. 591; City of Chicago v. O'Connell, 278 Ill. 591, 116 N. E. 210.

The village clerk should have been compelled to file relator's written declaration and to file his certificate attesting that fact with the Railroad and Warehouse Commission.

The order is reversed and the cause remanded to the court below for further proceedings not inconsistent with this opinion.