GEORGE H. GOODRICH, IN HIS OWN BEHALF AND IN BEHALF OF ALL PATRONS IN THE CITY OF ANOKA OF THE NORTHWESTERN TELEPHONE EXCHANGE COMPANY SIMILARLY SITUATED v. NORTHWESTERN TELEPHONE EXCHANGE COMPANY.[1]

February 4, 1921.

No. 22,161.

**Temporary restraining order.**

1. An order granting a temporary injunction pending the action held not an abuse of discretion.

**Contract indefinite.**

2. A contract between the parties fixing telephone rates and charges to be made and exacted by defendant for the use of its line, held ambiguous and uncertain in the respect stated in the opinion to such an extent as to leave the legal rights of the parties in doubt.

[1] Reported in 181 N. W. 333.

**Temporary injunction proper.**

     3. In such a case, other essential facts appearing, a temporary in-junction is properly granted in an action involving rights arising under the contract.

**Statute construed.**

     4. Chapter 152, Laws 1915, held to except from its operation and ef-fect private contracts with the telephone companies existing at the time of the passage thereof.

Action in the district court for Anoka county to restrain defendant from enforcing exorbitant rates against plaintiff and those similarly situated for toll service over its telephone lines. From an order, Giddings, J., granting plaintiff's motion for a temporary injunction, defendant appealed. Affirmed.

*E. A. Prendergast* and *Dille, Hoke, Krause & Faegre,* for appellant.
*Will A. Blanchard,* for respondent.

BROWN, C. J.

Appeal from an order granting a temporary injunction restraining defendant from raising its telephone rates and charges as applied to the service in the city of Anoka. The writ was granted on the pleadings and affidavits submitted by the respective parties, from which the following facts appear:

On April 21, 1908, plaintiff and some 17 other persons residing in the city of Anoka, all of whom are and were patrons and subscribers to defendant's telephone service, in their own behalf and on behalf of all other residents of the city similarly situated, entered into a contract with the telephone company, whereby the following monthly schedule of rates and charges for telephone service in that city was agreed upon, namely:

     "Business phones, exclusive lines ......................$2.50
     "Business phones, two party ......................... 2.00
     "Residence phones, exclusive lines ................... 1.50
     "Residence phones, two party ....................... 1.25
     "Residence phones, four party ...................... 1.00

     "Class of service to be at option of user.

     "Other charges, and rentals and service affecting the city of Anoka to remain as at present.

"Above exchange charges to be net, and not to be increased until bona fide subscribers in the city of Anoka reach at least one thousand."

At the time the contract was entered into the toll charge for service between Anoka and St. Paul and Minneapolis was ten cents for the first three minutes' use of the line, and five cents for each minute in excess thereof. Defendant's list of bona fide subscribers in the city has not reached 1,000, nor any number in excess of about 700, and upon its face the contract is still in force and effect. Since its execution it has been acted upon and complied with by the parties until the present controversy arose, barring one previous attempt by defendant to increase the rates and charges for the Anoka-Minneapolis-St. Paul service.

By chapter 152, p. 208, Laws 1915, discriminatory telephone rates and charges were prohibited, with the exceptions stated therein, and all telephone companies of the state made subject to the regulation and control, including authority to fix and prescribe reasonable rates for telephone service, of the State Railroad and Warehouse Commission. Subsequent to the passage of the act and on or about May 15, 1915, defendant prepared and filed with the commission, as provided for by the statute, a general schedule of rates and charges for telephone service, thereby increasing the toll charges between Anoka and Minneapolis and St. Paul, from 10 to 15 cents for service over those lines. Thereupon an action was brought by one of the present plaintiffs, similar to the action at bar, to restrain defendant from putting the same into effect, on the ground, as in this action, that the proposed change violated the terms of the contract. But that suit was amicably disposed of by the parties, and by mutual consent defendant filed an amended schedule restoring the contract rate in question, and that rate has since been in effect.

In July, 1918, the telephone lines of the state, including defendant's line, were taken over by the Federal government for military purposes, but were turned back to the owners on August 1, 1919. During the time of Federal control rates and charges were prescribed by the Federal authorities, but expressly subject to existing private contract rights between the telephone companies and their subscribers. Following the return of the lines and the operation thereof to the owners, defendant, on August 1, 1919, prepared and filed with the Railroad and Warehouse Commission, as authorized by the statute, a revised schedule of rates

and charges, whereby the toll rate between Anoka-Minneapolis-St. Paul was increased from 10 to 25 cents, an increase of 15 cents over the allegal contract rate. The schedule, though prepared and filed under the statute, has not been approved by the Railroad and Warehouse Commission. Instead thereof the commission, pending investigation and general inquiry into the subject of telephone rates and charges, as authorized by the statute, made an order approving the rates established by the Federal authorities before the lines were turned back to the owners. But that order can have no application to the case at bar, for, as just stated, the Federal order excluded from its operation rates governed by existing contracts between the telephone companies and their subscribers.

The present action is to restrain defendant from putting into force and effect the schedule of August 1; the ground of the action being that the rates therein stated as to the Anoka-Minneapolis-St. Paul service violate the contract in question, and if put in force will expose plaintiffs to a multiplicity of suits, in protection of their rights, to their irreparable damage and injury.

Defendant contends in support of the appeal: (1) that the Anoka-St. Paul-Minneapolis toll charges were not made a part of or included in the contract in question, therefore that the foundation of the action fails; and (2) that, if such tolls are within the terms of the contract, the rights of plaintiff thereunder were abrogated by chapter 152, p. 208, Laws of 1915, heretofore referred to, whereby all discriminatory telephone rates and tolls are expressly prohibited.

1. The question whether a temporary injunction should issue in any particular case rests in the sound judgment and discretion of the trial court. Where the facts are in dispute and the legal rights of the parties are thus left in doubt, the action of the court in granting a writ for the preservation and protection of rights pending the suit will rarely be interfered with on appeal. Holmes v. Park Rapids Lumber Co. 108 Minn. 196, 121 N. W. 877; Velie v. Richardson, 126 Minn. 334, 148 N. W. 286; Mitchell v. City of St. Paul, 114 Minn. 141, 130 N. W. 66; 2 Dunnell, Minn. Dig. § 4490. The facts here presented bring the case within the rule. The right of defendant to enforce the tolls objected to is a matter of serious dispute on the record, and the legal rights of the

parties are thus left in doubt. It is therefore appropriate and proper that the status quo be maintained until the trial and determination of the questions involved.

2. The contract in question was in writing, and with one exception clearly expressed the rights and obligations of the parties thereunder. As prepared for signature of the parties the writing contained the clause, "Twin City toll charges not to be increased;" which was erased and stricken out before the signatures of the parties were attached. This act in concluding the agreement might be given substantial force in support of defendant's contention that the toll charges referred to were not included as an element of the transaction, were it not for the fact that the clause immediately preceded another clause of apparently equal significance, namely:

"Other charges and rentals and service affecting the city of Anoka to remain as at present."

The presence of this clause, with the one stricken out, leaves the intention of the parties somewhat in doubt. The contract as so finally agreed to and signed is in this particular respect ambiguous. The uncertainty can only be removed by extrinsic evidence, which is admissible in such cases as an aid in ascertaining the intention of the parties. It may appear when all the facts are presented that the parties regarded the second clause referred to as fully expressing an intention to include the Anoka-Minneapolis-St. Paul toll rates, and that the first was surplusage and unnecessary, and for that reason was stricken out. On its face the second clause, quite general in terms, cannot, as a matter of law, be construed to apply only to local charges not specifically listed. The language is broad enough to include the Minneapolis and St. Paul tolls if the parties so intended. Their intention is one of fact, to be determined when the evidence comes in. Gay v. Parish, 138 Ga. 399, 75 S. E. 323; 1 Dunnell, Minn. Dig. § 3400, et seq.

3. The contract is valid, at least its validity is not challenged by defendant. And if it shall be found on the trial to include the St. Paul-Minneapolis tolls, then it is clear that the rights of the parties thereunder are fully protected by the exceptions to the scope and operation of the statute, as expressed in section 11. (Chapter 152, p. 208, Laws 1915.) Although there is no express exception of contracts of this kind, the lan-

guage thereof taken as a whole discloses a purpose by the legislature to continue them in force until terminated by their own limitations, or are cancelled by the telephone company as there directed. 3 Dunnell, Minn. Dig. § 8948, et seq. It is possible the legislature could constitutionally have given the statute general application, and expressly abrogated the existing contract relations between the telephone companies and their patrons. We do not consider the question. But the exceptions found in section 11 show a clear purpose not to do so. The case of State v. Holm, 138 Minn. 281, 164 N. W. 989, did not involve private contracts rights and is not in point.

This covers the case and all that need be said in disposing of the points involved. There was no abuse of discretion in allowing the temporary injunction, and the order granting it is accordingly affirmed.