## CITY OF ST. PAUL v. TRI-STATE TELEPHONE AND TELEGRAPH COMPANY.[1]

February 15, 1935.

No. 30,231.

*C. B. Randall, Karl F. Oehler, F. E. Randall,* and *Tracy J. Peycke,* for appellant.

*John L. Connolly* and *Louis P. Sheahan,* for respondent.

LORING, JUSTICE.

This case comes here upon an appeal from a judgment of the district court reversing an order of the railroad and warehouse commission which refused to consider an application by the city to compel the telephone company to provide and maintain without charge all wires, conductors, and conduits required by the city for its fire alarm and police call systems.

[1]Reported in 258 N. W. 822.

Franchises granted by the city to the Mississippi Valley Telephone Company and the Northwestern Telephone Exchange Company were later acquired by the Tri-State Telephone and Telegraph Company. These franchises required the telephone company to provide to the city without charge the equipment sought in this proceeding. The franchises were for specific terms of years and would have expired some years ago had they not been surrendered to the city under the provisions of L. 1915, c. 152, now 1 Mason Minn. St. 1927, c. 28A-1. Indeterminate permits were issued in lieu of these franchises by the railroad and warehouse commission. The telephone company now refuses to furnish these facilities without cost, and by this proceeding the city seeks to compel it to do so.

The statute gives the railroad and warehouse commission the same supervisory power over telephone companies as it has over railroad and express companies, and the first question presented by this appeal is whether the facilities sought by the city are telephone service within the jurisdiction of the commission. The city maintains its own police call and fire alarm system. The police call system is telephonic and is entirely separate from the telephone company's system. The fire alarm system is both telegraphic and telephonic in character and equally as separated from the general telephone system. It is the wires, poles, conductors, conduits, and other items connected with these systems which the city now seeks to compel the telephone company without cost to set up and furnish and connect with the switchboards of the city's systems.

It is quite obvious that the facilities sought in the city's petition are no part of the public telephone system which the company holds itself out as ready to furnish to the public. They are no more a part of the company's plant than would be a private telephone exchange set up wholly within a building and entirely unconnected with the general telephone system. Chesapeake & Potomac Tel. Co. v. Manning, 186 U. S. 238, 246, 247, 22 S. Ct. 881, 885, 46 L. ed. 1144, 1148. To use the illustration there used by the Supreme Court:

486

"And we start with the proposition that it cannot be presumed that a legislature intends any interference with purely private business. It cannot ordinarily prescribe what an individual or corporation, engaged in a purely private business, shall charge for services, and, therefore, although the language of a statute may be broad enough to include such private business, it will generally be excepted therefrom in order to remove all doubts of the validity of the legislation. It appears that some portion of the defendant's business is of a purely private nature, the receipts whereof are spoken of in its reports as private rentals, and as to such business Congress could not, if it would, prescribe what shall be charged therefor. * * *

"A railroad company may, if authorized by its charter, carry on not simply its strictly railroad business, but also an establishment for the manufacture of cars and locomotives. The fact that it is engaged in these two different works would not in itself subject the manufacture of cars and locomotives to the supervision of the legislature, although such body would have the right to regulate the charges for railroad transportation."

If the facilities here sought are a private use as distinguished from "furnishing any telephone service to the public" (1 Mason Minn. St. 1927, § 5287), then it is beyond the legislative power to compel it. That the private service may be sought by the municipality in furtherance of its governmental functions makes no difference. Chesapeake & Potomac Tel. Co. v. Manning, 186 U. S. 238, 22 S. Ct. 881, 46 L. ed. 1144.

The facilities sought are wholly unrelated to the telephone business. They could with equal justice be sought from any other public utility using the streets of the city. The company contends that for all purposes not connected with the public telephone service its right to the use and enjoyment of its property is as perfect and absolute as that of an owner of property not burdened with public supervision and control. Pittsburgh F. W. & C. Ry. Co. v. Bingham, 29 Ohio St. 364, 370, 371. We think this contention is sound and that the service sought cannot be compelled by the com-

mission but must be left to voluntary contract. In State ex rel. Tri-State Tel. & Tel. Co. v. Holm, 138 Minn. 281, 285, 164 N. W. 989, this court had before it a case where the saving clause of § 5297 was in effect, and the question whether such conditions as are here sought could be imposed was not before the court.

The judgment is reversed.

STONE, JUSTICE, took no part.