**U S WEST COMMUNICATIONS, INC., Appellant,**

v.

**CITY OF REDWOOD FALLS, Respondent.**

**No. C6–96–1765.**

Court of Appeals of Minnesota.

Jan. 28, 1997.

Review Denied April 15, 1997.

---

Victoria T. Aguilar, David G. Seykora, Minneapolis, Timothy D. Kelly, Kelly & Berens, P.A., Minneapolis, Jeffrey S. Bork, Denver, CO (pro hac vice), for Appellant.

Stephen P. Thies, City Attorney, Redwood Falls, for Respondent.

Carla J. Heyl, D. Christopher Smith, St. Paul, for intervenor League of Minnesota Cities.

Hubert H. Humphrey, III, Attorney General, Jeff Oxley, Dennis D. Ahlers, Assistant Attorney General, St. Paul, for amicus curiae Minnesota Department of Public Service.

Susan Allender, Assistant Attorney General, St. Paul, for amicus curiae Minnesota Public Utilities Commission.

William E. Flynn, David L. Sasseville, Lindquist & Vennum, P.L.L.P., Minneapolis, for amicus curiae Minnesota Business Utility Users Council.

Timothy E. Marx, City Attorney, Philip B. Byrne, Assistant City Attorney, St. Paul, for amicus curiae City of St. Paul.

Michael T. Norton, Acting City Attorney, William C. Dunning, Assistant City Attorney, Minneapolis, for amicus curiae City of Minneapolis.

Considered and decided by HARTEN, P.J., TOUSSAINT, C.J., and CRIPPEN, J.

## OPINION

HARTEN, Judge.

The City of Redwood Falls enacted an ordinance granting a franchise to U S WEST for its use of the city's rights-of-way. U S WEST sued the city, seeking to enjoin the city from enforcing its ordinance. The city moved to dismiss U S WEST's complaint for failure to state a claim upon which relief can be granted, and the district court granted the city's motion. We reverse and remand.

## FACTS

In 1990, the City of Redwood Falls (the city) enacted an ordinance granting a franchise to U S WEST governing its use of the city's rights-of-way. The ordinance required that U S WEST: (1) pay an annual franchise fee for installing telephone lines in the city's rights-of-way; (2) pay an annual easement fee for each location of telephone line construction; and (3) encase its fiber optic telephone lines in concrete duct or agree to limit to $2,000 the liability of any person cutting a fiber optic telephone line.

The city did not attempt to enforce the ordinance until 1995, when U S WEST notified the city that it planned to lay additional fiber optic lines in the city to serve the nearby city of Morton. The city engineer then refused to issue an excavation permit unless U S WEST agreed to comply with the city's franchise ordinance.

U S WEST petitioned the Minnesota Public Utilities Commission (MPUC) for an order declaring that the MPUC had the exclusive authority to regulate the right-of-way issues addressed by the city's franchise ordinance. U S WEST's petition alleged that several other Minnesota municipalities had enacted similar ordinances purporting to regulate telephone line construction. The petition requested that the MPUC issue a general order exercising exclusive jurisdiction over the substantive regulation of Minnesota public rights-of-way. The MPUC dismissed U S WEST's petition, concluding that it had no authority over municipalities.[1]

U S WEST brought the instant action in district court, requesting an injunction to bar enforcement of the city's ordinance. The city and intervenor League of Minnesota Cities moved to dismiss U S WEST's complaint for failure to state a claim upon which relief can be granted. The district court granted the motion and dismissed U S WEST's complaint. This appeal resulted.

## ISSUES

1. Does the city have the authority to require that U S WEST obtain a franchise for its use of the city's rights-of-way?

2. Does the city have the authority to require that U S WEST encase its fiber optic lines in concrete duct or, alternatively, agree to a limitation of liability?

## ANALYSIS

■ At the threshold, U S WEST argues that the telephone franchise ordinance vio-

---

[1] The MPUC order directed Minnesota telecommunications providers to notify the MPUC upon encountering local ordinances that appeared to conflict with the MPUC's exclusive authority. The MPUC stated that upon such notification, it would examine a challenged ordinance to determine whether it violated the MPUC's exclusive statewide authority over telecommunications providers. *Order Dismissing Petition & Requiring Notification of Mun. Ordinances Conflicting with Comm'n's Exclusive Auth.*, Docket Nos. P–421/EM–96–182; P–999/CI–96–826 (July 24, 1996).

lates the city's home rule charter. Because the district court did not consider this issue, we decline to address it on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (court should not decide issue that was not decided by the district court).

 The district court dismissed U S WEST's complaint for failure to state a claim upon which relief can be granted. The district court concluded that the city had the statutory authority to enact and enforce its franchise ordinance.

> In reviewing cases dismissed for failure to state a claim on which relief can be granted, "[t]he only question before us is whether the complaint sets forth a legally sufficient claim for relief. It is immaterial to our consideration here whether or not the plaintiff can prove the facts alleged."

*Elzie v. Commissioner of Pub. Safety*, 298 N.W.2d 29, 32 (Minn.1980) (citation omitted) (emphasis omitted). The construction of a statute or ordinance is a question of law, which we may review de novo. *Dunham's Food & Drink, Inc. v. City of West St. Paul*, 526 N.W.2d 413, 414 (Minn.App.1995).

### 1. Telephone Company Franchises; Easement Requirements

In the early 1900's, the legislature provided for municipal regulation and franchising of public service corporations, including telephone companies. Minn. Rev. Laws §§ 2841–2842, 2927 (1905) (current version at Minn.Stat. §§ 300.03–04, 222.37 (1996)).

In 1915, the legislature empowered the Railroad and Warehouse Commission to control telephone companies. 1915 Minn. Laws ch. 152 (current version at Minn.Stat. §§ 237.01–.80 (1996)).[2] The law enabled a telephone company to surrender a municipal franchise and "thereafter hold such permit under all the terms, conditions, and limitations of [the new laws governing telephone

regulation]." *Id.* ch. 152, § 15 (current version at Minn.Stat. § 237.18 (1996)).

> [T]elephones are now almost entirely under the control of the state commission, and * * * municipalities no longer have authority to grant franchises to telephone companies * * *.

Frank William Hanft, *Control of Public Utilities in Minnesota*, 16 Minn. L.Rev. 457, 544 (1932); *see State ex rel. Tri–State Tel. & Tel. Co. v. Holm*, 138 Minn. 281, 283–84, 164 N.W. 989, 990 (1917) (stating that the legislature "took away from the municipalities the power to license the occupation of the streets by telephone companies and placed it exclusively with the Railroad and Warehouse Commission").

 The city argues that despite enactment of the 1915 legislation, the legislature never repealed sections 300.03, 300.04, and 222.37, which purportedly continue to authorize municipal franchising and regulation of public corporations, including telephone companies. As set forth below, we conclude that although these statutes continue to authorize gas and electric franchises, they no longer govern telephone franchises.[3]

> The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature.

Minn.Stat. § 645.16 (1996). Where possible, a court must give effect to all related statutory provisions. *Itasca County Bd. of Comm'rs v. Olson*, 372 N.W.2d 804, 807 (Minn.App.1985). But if statutes are irreconcilable, a special provision prevails over a general provision, unless the general provision was enacted at a later session with a manifest expression of intent that the general provision prevail. Minn.Stat. § 645.26, subd. 1 (1996).

 Chapter 237, governing the authority of the MPUC to regulate the telephone industry, is more specific than the general

---

**2.** In 1971, the Department of Public Service was substituted for the Railroad and Warehouse Commission. 1971 Minn. Laws ch. 25, § 67. In 1980, the legislature included the MPUC as a controlling authority over telephone companies. 1980 Minn. Laws ch. 614, § 118.

**3.** The city argues that a telephone company is no different from a gas or electric utility. But chap-

ter 216B, governing gas and electric utility services, provides specific authority for municipal franchises. Minn.Stat. § 216B.36 (1996). *See City of St. Paul v. Northern States Power Co.*, 462 N.W.2d 379, 385 (Minn.1990) (recognizing city's authority to franchise natural gas utility). Chapter 237, governing telephone service, does not contain similar authority.

provisions in Minn.Stat. §§ 300.03–.04 and Minn.Stat. § 222.37. We conclude that the more specific provisions in chapter 237 must prevail over the less specific provisions in chapters 300 and 222. Chapter 237 evidences a legislative intent to abolish the right of municipalities to require a franchise from a telephone company. The city concedes that its easement requirements stem from its franchise authority; therefore, our conclusion that the city has no authority to require a telephone franchise effectively resolves associated issues regarding the city's easement requirements.

**2. Municipal Regulation: Encasement of Lines**

The MPUC may authorize telephone line construction and "prescribe the terms and conditions upon which construction or service delivery may be carried on." Minn.Stat. § 237.16, subd. 1(a)(1) (1996). This statute is prefaced by a statement that the MPUC's authority is "[f]or the purpose of bringing about fair and reasonable competition for local exchange telephone services." *Id.*, subd. 1(a) (1996).[4] The district court concluded that this preface was intended to limit the MPUC's authority and to recognize that cities may regulate more than the location of telephone lines and facilities. We disagree with that conclusion.

With the transfer of authority over telephone companies to the state commission in 1915,

> [t]he legislature virtually stripped municipalities of the power to control telephone companies, and vested control of all telephone lines in the state railroad and warehouse commission.

Hanft, *supra*, at 498. The legislature authorized a municipality to retain only

> the same powers of regulation which it now possesses with reference to the location of poles, wires, and other equipment or facilities on, below, or above the streets, alleys, or other public grounds so as to prevent any interference with the safe and convenient use of streets, alleys, and other public grounds by the public.

Minn.Stat. § 237.16, subd. 1(d) (1996). This limited authority to regulate the location of telephone lines does not encompass the city's requirement that U S WEST encase its fiber optic lines in concrete duct or otherwise agree to a limitation of liability.

**DECISION**

The city lacks the authority to require U S WEST to obtain a franchise or encase its fiber optic lines in concrete duct. The district court erred by dismissing U S WEST's complaint for failure to state a claim upon which relief can be granted. We express no opinion on the extent of the MPUC's authority to regulate telephone line construction in municipal rights-of-way.

**Reversed and remanded.**

---

4. Previously, the MPUC's authority under this section was "[f]or the purpose of bringing about uniformity of practice." Minn.Stat. § 237.16, subd. 1 (1994).