## No. 16,152.

## DOWNING ET AL. *v.* THE INDIANA STATE BOARD OF AGRICULTURE.

STATE BOARD OF AGRICULTURE.—*Private Corporation.—Constitutional Law. —Impairing Obligation of Contract.*—The Indiana State Board of Agriculture, organized under an act of February 14th, 1851, entitled "An act for the encouragement of agriculture," is a private corporation, and hence the act of March 4th, 1891, abolishing the said State board of agriculture, transferring all its assets, liabilities and credits to a State agriculture board, and providing for the creation of the State Agricultural and Industrial Board, is unconstitutional, as impairing the obligation of contract, and seeking to take the property of the State Board of Agriculture without due process of law.

From the Marion Superior Court.

*A. G. Smith,* Attorney General, and *A. C. Harris,* for appellants.

*J. M. Butler, A. H. Snow* and *J. M. Butler, Jr.,* for appellee.

OLDS, J.—This action was brought by the appellee, the Indiana State Board of Agriculture, a corporation created under an act entitled "An act for the encouragement of agriculture," approved February 14th, 1851, against the appellants, claiming to act as individuals and as a State agricultural and industrial board, created by an act of the Legislature of 1891, entitled "An act abolishing the State Board of Agriculture and transferring all its assets, liabilities and credits to a State agricultural board; providing for the creation of the State Agricultural and Industrial Board," etc., —which became a law by lapse of time without the Governor's signature March 4th, 1891,—to quiet the title to certain real estate described in the complaint, and known as the State fair grounds, to declare null and void appellants' claims of ownership, and enjoining them from setting up any interest in or ownership of said real estate, and to have said act of the Legislature of 1891 declared unconstitutional and void;

also asking the same relief as to personal property, and asking that appellee be declared the owners of appropriations made by an act of the Legislature, approved February 23d, 1889, appropriating for the use of the appellee $10,000 annually for five years, two of which annual appropriations have been paid to the appellee.

On the trial of the cause in the court below final judgment and decree was entered in favor of the appellee, quieting title of the appellee in the real estate, that the act of the Legislature of 1891 was unconstitutional and void, that appellee is the owner of the personal property, and that the appellee is the owner of the unpaid appropriation, and entitled to receive the payment of the same, and perpetually enjoining the appellants either as individuals or as a State board under the act of 1891 from claiming or asserting any title to or ownership of the real estate, personal property or said appropriation, or demanding or receiving possession of either or any part of the same.

We deem it unnecessary to set out or make any further statement of the pleadings or issues in the case, or the manner in which the question for decision is presented, as it is conceded that the sole question presented for the decision of this court is, whether or not the appellee, the Indiana State Board of Agriculture, is a private corporation? If it is a private corporation then the Legislature exceeded its powers by the passage of the act of 1891, and such act is unconstitutional and void, and the judgment must be affirmed. But if such board is a public corporation, a State institution, belonging to the State, and subject to legislative control, then said act of the Legislature is valid, and the judgment must be reversed.

The question must be determined by the construction to be placed on the act of the Legislature approved February, 14th, 1851, by which the Indiana State Board of Agriculture was incorporated.

So much of the act as is material for the decision of this case reads as follows :

"*An Act for the Encouragement of Agriculture, Approved February 14th, 1851.*

"Section 4. That Joseph A. Wright of Marion county, Alexander C. Stevenson of Putnam county, Jeremiah McBride of Martin, Roland Willard of Kosciusko, Jacob R. Harris of Switzerland, Henry L. Ellsworth of Tippecanoe, John Ratliff of Morgan, Joseph Orr of Laporte, David P. Holloway of Wayne, John B. Kelly. of Warrick, William McLain of Lawrence, Samuel Emerson of Knox, John McMahan of Washington, Thomas W. Sweney of Allen, George Brown of Shelby, and George Hussey of Vigo, be and they are hereby created a body corporate, *with perpetual succession,* in the manner hereafter described, under the name and style of the "Indiana State Board of Agriculture."

"Section 5. It shall be the duty of said board, or any five of them, to meet in the city of Indianapolis at such time as the Governor shall appoint, and to organize by appointing a president, secretary and treasurer, and such other officers as they may deem necesssary ; also, determine by lot the time each member shall serve, so that the term of service of one-half of the members shall expire annually, on the day of the annual meeting in January ; and the president shall have power to call meetings of the board whenever he may deem it expedient.

"Section 6. There shall be held in the city of Indianapolis, on the first Thursday after the first Monday in January, an annual meeting of the Indiana State Board of Agriculture, together with the president of each county agricultural society, or other delegate therefrom duly authorized, who shall, for the time being, be *ex officio* members of the State Board of Agriculture, for the purpose of deliberation and consultation as to the wants, prospects and conditions of the agricultural interests throughout the State ; and at such annual meeting the several reports from the county societies shall

be delivered to the president of the Indiana State Board of Agriculture ; and the said president and delegates shall at this meeting elect suitable persons to fill all vacancies in the Indiana State Board of Agriculture.

" Section 7.  And it shall be the duty of said board to make an annual report to the General Assembly of the State, embracing the proceedings of the board for the first year, and an abstract of the proceedings of the several county agricultural societies, as well as a general view of the condition of agriculture throughout the State, accompanied by such recommendations as they may deem interesting and useful.

" Section 8.  That the sum of one thousand dollars be and the same is hereby appropriated from the treasury for the use of the board, and an account of the expenditures of the board shall be included in the annual report of the board to the General Assembly.

" Section 9.  That the Indiana State Board of Agriculture shall have the power to hold State fairs at such times and places as they may deem proper and expedient, and have the entire control of the same, fixing the amounts of the various premiums offered, embracing every article of science and art, or such portions of them as they may deem expedient and proper, calculated to advance the interest of the people of the State.  *They may employ assistants, receive contributions, donations, etc.,* and unite with a county or district society for the purpose of defraying the expenses of said State fairs."

The foregoing act was passed under the Constitution of 1816, which contained the following provision :

" Section 1.  Knowledge and learning, generally diffused through a community, being essential to the preservation of a free government, * * * the General Assembly shall, from time to time, pass such laws as shall be calculated to encourage intellectual, scientifical and *agricultural* improvement, by allowing rewards and immunities for the promotion and improvement of arts, sciences, commerce, manufactures, and natural history ; and to countenance and encourage the prin-

ciples of humanity, industry and morality." Article 9, section 1.

The Constitution of 1816 contained no provision against creating private corporations by special acts.

In Angell and Ames on Corporations, at section 13, it is said : " The public benefit is deemed a sufficient consideration of a grant of corporate privileges ; and hence, when a grant of such privileges is made (being in the nature of an executed contract), it can not, in case of a private corporation, which involves private rights, be revoked. The object in creating a corporation is, in fact, to gain the union, contribution, and assistance of several persons, for the successful promotion of some design of general utility ; though the corporation may, at the same time, be established for the advantage of those who are members of it, the principle is, and has been so laid down by Domat, that the design of a corporation is to provide for some good that is useful to the public. ' With respect to acts of incorporation,' says one of the judges of the Court of Appeals of Virginia, ' they ought never to be passed but in consideration of services to be rendered to the public.' "

In section 14 the following statement is made : " The Bank of the United States, for example, if the stock belonged exclusively to the government, would be a public corporation, but inasmuch as there are other and private owners of the stock, it is a private corporation. "

In section 31 it is said : " Private corporations are indisputably the creatures of public policy, and, in the popular meaning of the term, may be called public ; but yet, if the whole interest does not belong to the government (as if the corporation is created for the administration of civil or municipal power), the corporation is private. "

In section 32 it is said : " Nor does it make any difference that the State has an interest as one of the corporators, for it does not by such participation identify itself with the corporation. Says MARSHALL, C. J. : ' The Planters' Bank of

Georgia is not the State of Georgia, although the State holds an interest in it.'"

In section 34 it is said: "A hospital founded by private benefaction is, in point of law, a private corporation, though dedicated by its charter to public charity. And a college founded, and endowed in the same manner, though for the general promotion of learning, is private. A college, merely because it receives a charter from the government, if founded by private benefactors, it has been held, is not thereby constituted a public corporation controllable by the government; nor does it make any difference that the funds have been generally derived from the bounty of the government itself." See sections 39 and 40.

In 1 Dillon on Corporations (4th ed.), section 22, it is said: "Corporations intended to assist in the conduct of local civil government are sometimes styled political, sometimes public, sometimes civil, and sometimes municipal, and certain kinds of them, with very restricted powers, *quasi* corporations—all these, by way of distinction, from private corporations."

Section 52. "A fundamental division of corporations heretofore adverted to, is into public and private. The importance of this distinction can not be too much emphasized, since upon it are based the legal principles which so broadly distinguish the two classes of corporations. With private corporations the present work has no other concern than to point out by way of illustration wherein they differ from those which are public. Both classes are alike created by the Legislature, and in the same way,—by special charter or under general incorporation acts."

In section 53 it is said: "Private corporations are created for private, as distinguished from purely public purposes, and they are not, in contemplation of law, public, because it may have been supposed by the Legislature that their establishment would promote, either directly or consequentially, the public interest. They can not be compelled to accept a charter or incorporating act. The assent of the

corporation is necessary to make the incorporating statute operative ; but when assented to, the legislative grant is irrevocable, and it can not, without the consent of the corporation, be impaired or destroyed by any subsequent act of legislation, unless the right to do so was reserved at the time." Waterman on the Law of Corporation asserts the same doctrine. Sections 14, 16 and 17.

In the case of *Trustees of Dartmouth College* v. *Woodward,* 4 Wheaton, U. S., 518, it is held that public corporations are such only as are founded by the Government for public purposes, where the whole interests belong to the Government. In this case it is held that no authority exists in a government to regulate, control, or change a corporation created by it, except when the corporation is, in the strict sense, a public one, and its franchises the exclusive property of the government itself. In such a case the officers of the corporation would be public officers. The corporation in this case was created by a charter, in which the the trustees were mentioned by the name of " The Trustees of Dartmouth College," granting to them and their successors the usual corporate privileges and powers, and authorizing the trustees, who are to govern the college, to fill up all vacancies which may be created in their own body, and it was held to be a private corporation.

In the case of *Board of Trustees, etc.,* v. *State,* 14 Howard, 268, it was held that the acts of 1806 and 1807, establishing Vincennes University, and incorporating the same, by the name of the Board of Trustees of the Vincennes University, made it a private corporation over which the State could not exercise control. *Union Pacific R. R. Co.* v. *United States,* 99 N. J. 700.

The State University was established by an act which made provision for a board of trustees, and enacted that they and their successors shall be a body politic, with the style of " The Trustees of the Indiana University," in that name

to sue and be sued, etc. In the case of *State, ex rel.,* v. *Carr,* 111 Ind. 335, the court quoted from the case of *Regents, etc.,* v. *Williams,* 9 Gill and J. 365, 388, with approval, the following language:

"A corporation may be private, and yet the act or charter of incorporation contain provisions of a purely public char- ✓ acter, introduced solely for the public good. * * * A public corporation is one that is created for political purposes, with political powers, to be exercised for purposes connected with the public good in the administration of civil government; an instrument of the government subject to the control of the Legislature, and its members officers of the government, for the administration and discharge of public duties, as in the cases of cities, towns," etc. The court further says : " That the university was established under the direct authority of the State, through a special act of the Legislature, or that the charter contains provisions of a purely public character, nor yet that the institution was wisely established, and is and should be perpetually maintained at the public expense, for the public good, does not make it a public corporation, or constitute its endowment fund a public fund." It is further said : " The legal status of the State university being that of a technically private, or, at most, a *quasi* public corporation, the university fund, of which it is the sole beneficiary, is, therefore, not a public fund, within the meaning of the law."

These legal rules laid down by the authorities from which we have quoted, and stated the law as declared, are supported and adhered to by innumerable decisions of courts of the highest standing, from which we might quote and extend this opinion to an unreasonable and unwarranted length, but we deem it unnecessary to do so. Under the rules stated it is clear that the Indiana State Board of Agriculture is a private corporation, and it matters not to what extent the State has voluntarily aided it by contributions and appropriations.

Downing *et al. v.* The Indiana State Board of Agriculture.

The corporation now owns a large amount of property. The main funds it has handled and used have been received from private citizens, railroad companies, the city of Indianapolis, and funds received from State fairs held by the board. The members of the board have not been chosen by the State; they are not State officers. It has not been a State institution. It is true there are no shares of stock issued and held by the trustees or private individuals. Neither are shares of stock issued by colleges and universities or charitable institutions, which are private corporations, and it is not necessary to make it a private corporation that shares of stock be issued. The act creating it made it a body corporate, with perpetual succession in the manner prescribed. It is in a sense an educational institution. It seeks to bring together people engaged in agricultural pursuits, as well as those engaged in manufacturing farm machinery and other articles adapted to use in the cultivation of the soil and harvesting of crops, and other articles used by the public, as well as those engaged in raising of stock, and to exhibit to those in attendance the crops resulting from the various methods of farming, and the various machinery manufactured for the use of those engaged in agricultural pursuits, as well as the various breeds of stock, and give to the people of the State, and particularly those engaged in agricultural pursuits, an opportunity of discussing the various methods of farming and farm implements used, and the different breeds of stock raised, and to educate the people in this way in the pursuits of agriculture, and to educate and improve the condition of the agriculturist, that they may gain a knowledge of the best methods of farming, best machinery to use, and the best breeds of stock.

An agricultural society is defined in the Century dictionary as "A society for promoting agricultural interests, such as the improvement of land, of implements of the breeds of cattle," etc.

"A New English Dictionary" defines an agriculturist as "A student of the science of agriculture." Other definitions are given.

The trustees so elected have no financial interest in the property of the corporation, that is to say, they are not the owners of the property of the corporation in such a sense as that they can sell it and appropriate the proceeds to their own use any more than could the trustees of the State university sell and convert the proceeds of the property to their own use; they are simply trustees to manage and control it.

The institution, the corporation, exists for the benefit of the people of the State, and the law would not allow its purpose to fail by a failure of those charged with the duty of electing the successor, but neither the State, by its General Assembly, nor the trustees of the corporation, have any right to appropriate the property of the corporation to the use of State or the individual members of the board.

The General Assembly of the State has recognized the Indiana State Board of Agriculture as a private corporation. By an act of the Legislature in 1877 the State loaned to the corporation $25,000, and took a mortgage upon its property. Again, in 1881, by an act of the Legislature such lien for $25,000 was postponed, and made a subsequent lien to a lien of a third party on the lands of said corporation. See, in addition to the authorities above cited : 1 Morawetz Private Corporations (2d ed.), sections 1, 3 and 4 ; *Trustees, etc.,* v. *Bradbury,* 11 Maine, 118 ; *Allen* v. *McKean,* 1 Sumner, 277 ; *State* v. *Trustees, etc.,* 5 Ind. 77 ; *Baltimore, etc., R. R. Co.* v. *Fifth Baptist Church,* 108 U. S. 317 ; *Yarmouth* v. *North Yarmouth,* 34 Maine, 411 ; *People* v. *Morris,* 13 Wend. N. Y. 325 ; *State Board of Agriculture* v. *Citizens Street R. W. Co.,* 47 Ind. 407.

The act of 1891 attempts to take from the appellee all the property acquired by it. It both impairs the contract or charter of 1851, by which it made the appellee a private

corporation, and it seeks to take its property from it without due process of law.

Having reached the conclusion that the appellee is a private corporation, it leads to an affirmance of the judgment.

Judgment affirmed, with costs.

McBRIDE, J., took no part in the decision in this case.

Filed June 19, 1891.

## ON PETITION FOR A REHEARING.

OLDS, J.—Counsel for appellants earnestly insist that there should be a rehearing in this cause. Counsel state in their brief that "The court decides ' it (the act of 1891) both impairs the contract or charter of 1851, * * * and it seeks to take its property from it (appellee) without due process of law.' If either or both these propositions is not good law, then we must believe the court will grant our petition," and then follow with an able discussion of these propositions, seeking to show that they are not good law.

As stated in the original opinion, the sole question presented in this case is whether or not the appellee, the Indiana State Board of Agriculture, is a private corporation. If it is a private corporation, then the act of 1891 both impairs the contract between the State and the appellee, as made by the charter of 1851, and it seeks to take its property without due process of law.

If the act of 1851 created and made the appellee a private corporation, then the property it holds as such corporation is as sacred as that of any individual, and any attempt by legislation to take such property from the corporation without compensation would be to impair the charter and take the property without due process of law. To sustain the decision it is only necessary to establish by sound reasoning and by authority that the appellee is a private corporation. That it is such a corporation we think is fully supported by the authorities cited in the original opinion.

Counsel assert, in effect, that, as the members of the board have no financial interest in the property of the corporation, they hold it in trust for the people of the State, that it is the same as the State capitol, or any other property of the State, belonging to the whole people of the State, hence is State property, and subject to legislative control, as is any other property of the State. And it is further asserted that there can not be any corporation, either public or private, without natural members; that if all the members of a private corporation die, or all of the citizens of a government die or emigrate, the corporation is extinct, and that the members of this corporation are to be elected by certain local agricultural societies, and it is possible, and, indeed, probable that these local societies may go out of existence or refuse to elect, and then the query is made as to what will become of the property.

This latter proposition is, we think, foreign to the case. There is no more probability of these local societies going out of existence or refusing to elect, than that those whose duty it is to elect members of like boards, such as trustees of colleges or hospitals, will refuse to elect. The question propounded is not presented in this case, though we think the law would not allow its purpose to fail by reason of the failure or refusal of those whose duty it is to select the members to do so. "A court of equity never wants a trustee." The first proposition is answered by the authorities cited holding that certain colleges and universities are private corporations. The appellees hold the property of the corporation the same as do the trustees of private corporations, for educational purposes. The property of the Vincennes University and State University belongs to the people of the State to the same extent and in the same manner as does the property of the appellee corporation.

It is suggested that in case of a college, university or hospital, they are created for the benefit of only the few— the university for those seeking an education, and the hos-

pital for those who are sick and afflicted and are permitted to enter for care and treatment—but with this theory of counsel we can not agree. The whole people of the State are interested in education, as they are in that the sick and afflicted shall be cared for. The whole people of the State are alike interested in the furtherance of education, whether it be of a literary character or in the development of agriculture; both pertain to the educational interests of the State.

The State, by its General Assembly, under the Constitution of 1816, might create a private corporation in furtherance of the education of her people in literature or agriculture, or it could establish an institution or create a board of trustees for that purpose, and operate the same as a State institution.

It is suggested by counsel that if this be a private corporation the State has, by the act of 1851, forever placed its agricultural and industrial interests, in so far as relates to exhibitions, beyond its control. We do not understand that it has done so. No exclusive right to hold exhibitions is attempted to be granted by the charter. It is suggested that the loaning of money by the State to the appellee, as stated in the original opinion, is not an argument in favor of the appellee being a private corporation, that even a *cestui que trust* may loan money, when necessary, to his trustee, and that an heir may loan money to an executor. Granting that they can, neither case is parallel with the case at bar. The heir and the executor and the *cestui que trust* and the trustees may be separate individual persons, capable of contracting with each other; but this case presents a case of the State loaning money to itself if the appellee is not a private corporation, and the taking of a mortgage on its own property. But, as it occurs to us, it is a case of legislative construction of the charter of 1851, treating it as having a corporate existence independent of the State, the loaning to it money and taking a mortgage upon its property. If it is not a

private corporation the mortgage would be of no value; the State would be taking a mortgage upon its own property. Certainly the Legislature would not·do so idle a thing. In our opinion the Legislature, by the loaning of the money and the taking of the mortgage, placed a construction on the charter, construing it as creating a private corporation, and dealing with it as such, loaning it money and taking a mortgage upon its property.

We are constrained to adhere to the decision in this case. The petition for rehearing is overruled.

Filed October 17, 1891.