ABRAM L. CORTELYOU ET AL. v. ALEXANDER G. ANDER-
SON ET AL.

Submitted March 22, 1906—Decided July 11, 1906.

1. The State Aid Road law of 1895 and its supplements (*Pamph. L.* 1895, *p.* 424; *Gen. Stat., p.* 2902, *pl.* 413, &c.; *Pamph. L.* 1896, *p.* 426; *Pamph. L.* 1897, *p.* 20; *Pamph. L.* 1898, *p.* 160; *Pamph. L.* 1899, *p.* 78; *Pamph L.* 1902, *p.* 18) are repealed by the act of April 1st, 1903. *Pamph. L.. p.* 145.

2. Proceedings for improvement of a road having been applied for and undertaken under section 8 of the act of 1895 (*Pamph. L., p.* 432; *Gen. Stat., p.* 2906, *pl.* 420; amended, *Pamph. L.* 1896, *p.* 246) and completed under the act of 1903 (*Pamph. L., p.* 145)— *Held,* that the latter act has the effect of relieving abutting land-owners from the liability to assessments for benefits to which they would have been subject had the act of 1895 remained unrepealed.

3. The constitutional limitations which prevent the legislature from impairing the obligations of contracts do not debar it from annulling obligations that are due to the public.

4. The third section of the general "Act relative to statutes" (*Gen. Stat., p.* 3194)—which declares that the repeal of any statutory provision by this act, or by any other act thereafter passed, is not to affect or impair any act done or right vested or accrued before such repeal shall take effect—is itself subject to repeal, and there-fore cannot impose a construction upon a later act contrary to the clear language of the latter.

On *certiorari.*

Before Justices FORT, PITNEY and REED.

For the prosecutors, *Clark & Case* and *Dungan & Reger.*

For the respondents, *John A. Frech.*

The opinion of the court was delivered by

PITNEY, J. This writ brings under review an order made December 27th, 1904, by the Somerset Circuit Court, appointing commissioners to assess upon landowners the peculiar benefits conferred by the improvement of a public road in that county.

The improvement was applied for in the year 1899 by the owners of at least two-thirds of the lands fronting upon the section of the road in question. By their petition to the board of chosen freeholders the applicants certified their willingness that the peculiar benefits conferred on the lands fronting on the road should be assessed thereon in proportion to the benefits conferred, to an amount not exceeding ten per centum of the entire cost of the improvement. The petition was presented under section 8 of the State Aid Road law of 1895. *Pamph. L., p. 432; Gen. Stat., p. 2906, pl. 420*; amended, *Pamph. L. 1896, p. 246.* The improvement was not undertaken by the board of freeholders until December 16th, 1902, upon which date, bids for the construction having been received pursuant to public advertisement, the board entered into a contract with the successful bidders for the macadamizing of the road in question. The advertisement for bids contained a clause reserving to the board the right to change a portion of the road from rock to macadam and from macadam to rock, if it seemed advisable, the price of such work as stated in the bid, by the square yard, to govern such work. In the contract as signed on December 16th, however, this reservation was not included. Nevertheless, it being afterwards found that the macadam road provided for in the contract would not be of sufficient depth upon certain portions of the road, a supplementary contract was authorized, by resolution of the board adopted April 14th, 1903, and was entered into between the representatives of the board and the contractors on May 5th, 1903, changing the former contract by substituting a twelve-inch rock bottom, consisting of six inches of rock and six inches of macadam, in the place of eight-inch macadam, upon something more than one-half of the road, the board agreeing to pay, in consideration of the change, $3,500, in addition to the sum of $36,500 called for by the contract of December 16th, 1902. No actual construction work was done prior to April 1st, 1903, but before that date considerable expense had been incurred by the contractors in the preparation of machinery

for crushing stone and the delivery of materials at the side of the road.

The improvement was completed on or before June 20th, 1904, and the contractors have been paid in full, including the five per centum of the moneys due them, which, pursuant to statute, was retained for one year. One-third of the cost has been paid from the state treasury and the remaining two-thirds from the county treasury, having been raised by *pro rata* assessment upon the entire county.

The question at issue is whether under these circumstances, and in view of the passage of the new State Aid Road law (*Pamph. L.* 1903, *p.* 145), which was approved April 1st, 1903, taking effect immediately, and which contains no provision for the assessment of benefits, the county treasury is still entitled to be recouped by an assessment upon the abutting lands peculiarly benefited of the amount of such benefits, up to ten per centum of the cost of the improvement.

It is not disputed, and, indeed, is indisputable, that the act of 1903 was, for all purposes *in futuro,* a complete repealer of the act of 1895. The only question of doubt is whether the act abrogated the right of the county to be reimbursed a portion of the cost of improvements previously undertaken by means of an assessment of benefits.

We assume, without deciding, that the right of the county to be partially reimbursed through such an assessment was vested (so far as any public right of a municipality can become vested) at the time of the approval of the act of April 1st, 1903, although the work of improvement had not then been done, but only contracted for.

Nor are we prepared to hold that the modification of the contract made on May 5th, 1903 (after the new act took effect), worked such a change in the situation as to wholly relieve the abutting landowners of their liability to assessments, if the act of 1903 had not that effect of its own force.

What, then, is the extent of the repealer? Section 18 of the new act declares as follows: "All acts and parts of acts inconsistent with the provisions of this act be and the same are hereby repealed; *provided,* that this repealer shall not

revive any acts heretofore repealed, nor shall any proceeding for the improvement of any public road, entered into before the passage of this act, abate, but such proceeding shall continue, as near as may be, as if the same had been commenced hereunder."

Manifestly this is an express repealer of the act of 1895 and its supplements (*Pamph. L.* 1895, *p.* 424; *Gen. Stat., p.* 2902, *pl.* 413, &c.; *Pamph. L.* 1896, *p.* 246; *Pamph. L.* 1897, *p.* 20; *Pamph. L.* 1898, *p.* 160; *Pamph. L.* 1899, *p.* 78; *Pamph. L.* 1902, *p.* 18), so far as their provisions are inconsistent with the act of 1903.

We take it to be equally clear that there is an implied repealer of the act of 1895 and its supplements, in so far as they are consistent with the act of 1903. For the latter act, so far as consistent with the former, renders the former unnecessary, and it is not to be presumed that the legislature intended the two schemes of legislation to have vitality at one and the same time. The titles of the two acts are identical—"An act to provide for the permanent improvement of public roads in this state." The general purpose of both is the same—to improve county roads under state supervision, at the joint expense of the state and county treasuries. It seems a clear case of implied repealer by way of revision. *Roche* v. *Mayor, &c., of Jersey City,* 11 *Vroom* 257; *De Ginther* v. *New Jersey Home,* 29 *Id.* 354; *Camden* v. *Varney,* 34 *Id.* 325, 329.

What are the "acts heretofore repealed" which by the proviso of the section under consideration are prevented from being revived? Plainly, this refers to the State Aid Road law of 1891, and its supplements and amendments, which, by section 19 of the act of 1895, were expressly repealed. *Pamph. L.* 1891, *p.* 378; *Pamph. L.* 1892, *p.* 346; *Pamph. L.* 1893, *pp.* 330, 364; *Pamph. L.* 1894, *pp.* 295, 296, 367, 410, 474.

That the provisions of the act of 1903, and the repealer in its eighteenth section contained, would, if not limited, have resulted in so completely wiping out the act of 1895 as to abate all pending proceedings for the improvement of any public road, seems to have been clear in the legislative

mind. This is evidenced by the proviso—"nor shall any proceeding for the improvement of any public road, entered into before the passage of this act, abate, but such proceeding shall continue," &c. And in what manner, under what regulations, are such pending proceedings to continue? The same as if this act had not been passed? Not at all—but "as near as may be, as if the same had been commenced hereunder."

The only thing, therefore, which prevented the road improvement now in question from being entirely abated by force of the act of 1903, with the probable result of subjecting the county to pay damages to the contractors as for a repudiation of the contract, was this qualification of the proviso that "such proceeding shall continue, as near as may be, as if the same had been commenced hereunder."

And this clause refers, by its plain terms, not merely to the physical work of improving the road, but to the "proceeding for the improvement," including the whole legal machinery for setting the work in progress, for supervising its progress, for ascertaining its cost and for distributing the burden thereof. That burden, by the act of 1903, is divided between the state treasury and the county treasury, without recourse to property owners whose lands are peculiarly benefited.

Counsel for the respondents, however, insists that this interpretation renders the act of 1903 *pro tanto* void, as impairing the contractual obligation of the petitioners to submit to an assessment for benefits. It is perhaps not entirely clear that any contractual obligation on their part had become fixed prior to the approval of the act of 1903. Assuming that it had, yet the constitutional limitations which prevent the legislature from impairing the obligation of a contract do not debar it from annulling obligations due to the public. And since the counties and other municipalities are but branches of the general government of the state, established for local purposes, the general legislature, being the supreme lawmaking authority, may, by statutory enactments or repealers, debar such local agencies from enforcing contracts

in their favor previously made. In *Rader* v. *Southeasterly Road District of Union,* 7 *Vroom* 273, 276, Justice Depue said: "The power of the legislature over corporations created for purposes of local government is supreme. From a grant of this character no contract arises with the corporation which exempts it from legislative control. The legislature may alter, modify or repeal the charter at any time, in its discretion. The only limitation on the operation of such repeal is as to creditors—that it shall not operate to impair the obligation of existing contracts or deprive them of any remedy for enforcing such contracts which existed when they were made." This refers, of course, to creditors of the municipal corporation. See, also, *Cooley Const. L.* (*5th ed.*) *192, and cases cited in notes; 8 *Cyc.* 902, 903.

Counsel also invokes the familiar rule that statutes are not to be given a retrospective effect unless their phraseology clearly requires it. This rule is fully recognized in our jurisprudence, and was recently applied by this court in *Mayor, &c., of Jersey City* v. *North Jersey Street Railway Co.,* 43 *Vroom* 383. With respect to repealing acts, the rule is crystallized in the third section of the general "Act relative to statutes," approved March 27th, 1874 (*Gen. Stat., p.* 3194), which declares that the repeal of any statutory provision by this act, or by any other act thereafter passed, is not to affect or impair any act done or right vested or accrued before such repeal shall take effect. But this statute is, of course, itself subject to repeal, and therefore cannot impose a construction upon any act thereafter passed which is contrary to the clear language of the later act.

To the extent that we give a retrospective effect to the act of 1903, we do so because in our view its terms admit of no other reasonable construction. No rights of private creditors are concerned; the contractors, as already mentioned, have been fully paid. The moneys that would be collected by means of the assessment for benefits would be public moneys, subject to disposition for public purposes by the public agents—by the board of chosen freeholders, if the legislature did not intervene to prevent; by the legislature itself, if it

saw fit, by amending the laws, to exercise a more direct control over the fund. And the supreme legislative power could prevent them from being appropriated for public purposes and leave them in the hands of the taxpayer by repealing the law under which alone the special tax could be assessed. This, we think, was done by the act of 1903.

It results that the order under review should be set aside.