# WESTERN STATES UTILITIES COMPANY v. CITY OF WASECA AND OTHERS.[1]

May 28, 1954.

No. 36,341.

[1]Reported in 65 N. W. (2d) 255.

*Franklin M. Stone, Moonan, Moonan, Friedel & Senn, Doherty, Rumble & Butler,* and *John F. Cahill,* City Attorney, for appellants.

*Gallagher & Madden, Robert J. Sheran, Miles B. Zimmerman,* and *Faegre & Benson,* for respondent.

NELSON, JUSTICE.

This proceeding is brought under the uniform declaratory judgments act, M. S. A. c. 555. Plaintiff is a public utility corporation engaged in the business of distributing natural gas in the city of Waseca, Minnesota, a city of the fourth class operating under a home rule charter since the year 1904. Individual defendants named in the proceedings were the municipal officers of the city and members of its city council. Plaintiff, as a utilities company, operates under the terms of Waseca Ordinance No. 266, enacted by the Waseca city council April 8, 1947, and duly approved by the voters pursuant to charter requirements, which was thereafter accepted by plaintiff's predecessor in interest. We are concerned here with the provisions of Waseca City Charter, chapter X, regulating franchises and especially with § 1 thereof, which defines the power and authority of the common council in the franchise field; § 2, which states the manner in which they are granted, extended, or amended; § 8, which provides that the common council of the city shall have and possess full power and authority at all times to regulate the

rates and charges of every public service and utility concern in said city operating under any franchise or privilege granted by such city and to require the same to be made and kept on a fair, reasonable, and just basis at all times;[2] and § 10 thereof, which provides that the charter shall be a part of any franchise-ordinance.[3]

The provisions of ordinance No. 266 which are material to this action are to be found in § 5, which, after stating that the net rates to be charged for gas shall at all times be fair and reasonable, sets up a schedule of rates; § 6, whereby the common council reserves the right by ordinance or resolution to change the rates;[4] § 10, which imposes a limitation on the schedule of rates;[5] and § 12 thereof, which provides that the provisions of chapter X of the city charter dealing with franchises are incorporated in and made a part of

[2]"Sec. 8. The common council of said city shall have and possess full power and authority at all times to regulate the rates and charges of every public service and utility concern in said city operating under any franchise or privilege granted by said city, and to require the same to be made and kept on a fair, reasonable and just basis at all times, and to that end may and shall have and possess full power and authority to make and enact all needful ordinances, rules; and regulations that may be requisite and necessary to give full force to the provisions hereof, and to that end shall have full power to examine into all affairs of said person, company, or corporation and examine all persons under oath relating to the public business thereof."

[3]"Sec. 10. The acceptance or use of a franchise or privilege from said city or within said city by any person, company, or corporation shall be an acceptance of all the provisions of this chapter, whether the same are specifically referred to or not, and all the provisions hereof shall constitute and be a part of such franchise, use, or privilege in said city without any express reference being made thereto."

[4]"Section 6. The above rates shall continue in force and effect until further regulation thereof by the Common Council which reserves the right by ordinance or resolution to change the said rates."

[5]"Section 10. The schedule of domestic, commercial and industrial gas rates in the City of Waseca during the continuance of this gas franchise will not be greater than the schedule of such rates generally enforced for the same class of service of the Interstate Power Company in the city of Albert Lea, Minnesota, or by any successor privately-operated company in Albert Lea, Minnesota."

ordinance No. 266 to the same extent as if said chapter X had been fully set forth therein.

By resolution dated March 8, 1949, the city council permitted the gas company to continue charging the rates specified in ordinance No. 266, even though such rates exceeded those then in force in Albert Lea, Minnesota, and were therefore in violation of § 10 of said ordinance. On October 10, 1950, the city council by resolution granted an increase in rates, after reciting that the rates specified in ordinance No. 266 did not produce a fair and reasonable rate and that § 10 of said ordinance was apparently inconsistent with §§ 5 and 6 thereof and § 8 of chapter X of the city charter. On January 8, 1951, the city council passed a resolution reciting in effect that said § 10 was inconsistent with §§ 5 and 6 of the ordinance and § 8 of chapter X of the city charter and submitted to the voters the question of repealing § 10 of the ordinance and enacting in lieu thereof a provision that rates shall be "fair, reasonable and just." This proposed amendment was rejected by the electorate.

On June 18, 1952, plaintiff presented a petition to the city council requesting an increase in rates, alleging that the cost of gas to it as a utility buying in the open market made it impossible to realize a fair and reasonable return under the present rates. But in view of the retention of § 10 of the ordinance by the voters, the city council refused to consider the petition until plaintiff first established that the proposed increase would not fix the Waseca rates above those charged in Albert Lea for the same class of service and has since continued in its refusal to act on the petition.

Plaintiff then commenced the present action, seeking to have § 10 of ordinance No. 266 declared invalid and unconstitutional, due to its inconsistency with all other charter and ordinance provisions and praying for an order directing the city council to consider plaintiff's application for a rate increase. The trial court found for plaintiff, determining and adjudging § 10 of ordinance No. 266 inconsistent with all other governing provisions and invalid and ordering the city council to consider plaintiff's application for a rate increase, pursuant to L. 1919, c. 469, and the provisions of the city

charter and the ordinance, insofar as those provisions are not in conflict with said statute. The court found that chapter X of the city charter and ordinance No. 266, after elimination of § 10 therefrom, were not in conflict with but governed by and subject to the provisions of L. 1919, c. 469 (M. S. A. 454.041 to 454.043).[6] Defendants now appeal from the lower court's order denying their motion for amended findings or a new trial.

The issues on appeal are whether § 10 of ordinance No. 266 is valid in view of the provisions of chapter X of the home rule charter of the city of Waseca and the statutory provisions of L. 1919, c. 469, and whether the plaintiff is estopped from questioning the validity of § 10 of said ordinance No. 266. Whether the city council can be ordered to entertain the plaintiff's petition for rate increases in accordance with L. 1919, c. 469, depends upon the answer to the above issues which are basic in this proceeding.

■ It is well established in this state that the legislature may regulate the rates for services rendered by a business concern affected with a public interest and that the fixing of public utility rates is a legitimate legislative exercise of the police power or of its reserve power. This power is not exhausted by a single exercise thereof but

---

[6]L. 1919, c. 469, § 1, provides in part:

"* * * in addition to all other powers now conferred upon any cities of the third and fourth classes in the state of Minnesota, whether existing under a general or special law or under a home rule charter, any such city is hereby authorized and empowered, through its city council or like governing body, by ordinance, to prescribe from time to time the rates which any public service corporation supplying gas or electric current for lighting or power purposes within said city may charge for such service. Provided, that nothing herein shall be construed to impair the obligation of any contract or franchise provision now existing between any such city and any such public service corporation. It shall be the right and duty of any such council or governing body to prescribe a rate which shall permit any such corporation to make a reasonable return on the capital investment in the business, under an economical and efficient management of the same; * * *."

is of a continuing nature and may be exercised repeatedly when the occasion requires.[7]

L. 1915, c. 152, placed all telephone companies doing business in the state under the supervision and control of the railroad and warehouse commission and provided that any telephone company holding a franchise from a municipality when the law became effective could surrender that franchise and receive in lieu thereof from the commission an indeterminate permit to occupy the streets of the municipality with its lines. In State ex rel. Tri-State Tel. & Tel. Co. v. Holm, 138 Minn. 281, 164 N. W. 989, this court held that no private proprietary right, vested in a village through a prior franchise, was impaired by such a surrender tendered pursuant to the statute. That opinion definitely established that regulation of public utilities is a proper legislative exercise of the police power. As stated by the court in that decision in a quotation from Cortelyou v. Anderson, 73 N. J. Law 427, 431, 63 A. 1095, 1097, "the constitutional limitations which prevent the legislature from impairing the obligation of a contract do not debar it from annulling obligations due to the public."

Mr. Chief Justice Hughes, speaking for the court in W. B. Worthen Co. v. Thomas, 292 U. S. 426, 432, 54 S. Ct. 816, 818, 78 L. ed. 1344, 1347, 93 A. L. R. 173, while referring to the holding in Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. ed. 413, 88 A. L. R. 1481 (which affirmed a decision appealed from this court), stated:

"* * * the constitutional prohibition against the impairment of the obligation of contracts did not make it impossible for the State, in the exercise of its essential reserved power, to protect the vital interests of its people. The exercise of that reserved power has repeatedly been sustained by this Court as against a literalism in the construction of the contract clause which would make it destructive

[7]In re Application to Fix Streetcar Rates of Fare, 228 Minn. 435, 37 N. W. (2d) 533; 3 Dunnell, Dig. (3 ed.) § 1607a; State ex rel. Quincy Ry. Co. v. City of Quincy, 290 Ill. 360, 125 N. E. 374; Chicago Rys. Co. v. City of Chicago, 292 Ill. 190, 126 N. E. 585.

of the public interest by depriving the State of its prerogative of self-protection."

Mr. Justice Holmes, speaking for the court in Block v. Hirsh, 256 U. S. 135, 157, 41 S. Ct. 458, 460, 65 L. ed. 865, 871, 16 A. L. R. 165, stated:

"* * * if the public interest be established the regulation of rates is one of the first forms in which it is asserted, and the validity of such regulation has been settled since Munn v. Illinois, 94 U. S. 113."

This type of regulation comes within the domain of the public interest and must be differentiated from what in fact constitutes regulation of contracts between individuals or private contracts not coupled or connected with the public interest which are matters of purely private concern.

It is well settled that every contract is subject to the implied condition that its fulfillment may be frustrated by a proper exercise of the police power. Of course, such exercise of that power must be for an end which is in fact public and the means adopted must be reasonably adapted to that end. The same is true of legislation impairing the obligations of a contract of a state instrumentality.[8]

It is well established that in order to know the obligations of a contract we must look to the laws in force at the time of its making.[9]

Minn. Const. art. 4, § 36, provides that any municipality of the state may frame its own charter subject to and in harmony with the constitution and laws of the state and within the general limits prescribed by the legislature but that the legislature has power to pro-

[8]Indiana ex rel. Anderson v. Brand, 303 U. S. 95, 58 S. Ct. 443, 82 L. ed. 685, 113 A. L. R. 1482; Central Union Tel. Co. v. Indianapolis Tel. Co. 189 Ind. 210, 126 N. E. 628; Downing v. Indiana State Bd. of Agriculture, 129 Ind. 443, 28 N. E. 123, 614, 12 L. R. A. 664.

[9]Blaisdell v. Home Bldg. & Loan Assn. 189 Minn. 422, 249 N. W. 334, 86 A. L. R. 1507, affirmed, 290 U. S. 398, 54 S. Ct. 231, 78 L. ed. 413, 88 A. L. R. 1481; W. B. Worthen Co. v. Thomas, 292 U. S. 426, 54 S. Ct. 816, 78 L. ed. 1344, 93 A. L. R. 173; W. B. Worthen Co. v. Kavanaugh, 295 U. S. 56, 55 S. Ct. 555, 79 L. ed. 1298, 97 A. L. R. 905; Treigle v. Acme Homestead Assn. 297 U. S. 189, 56 S. Ct. 408, 80 L. ed. 575, 101 A. L. R. 1284.

vide general laws relating to city affairs which are paramount while in force to any provisions in such charters dealing with the same subject matter.

L. 1919, c. 469, authorized all cities of the third and fourth classes to prescribe by ordinance from time to time the rates to be charged for electricity and gas. Although the legislature had power to grant this authority to all municipalities, it chose to limit it to the above classes of municipalities. After stating that nothing in the act was to be construed to impair the obligation of any *existing* franchise or contract between a city and a utility company, the statute provided that it was the right and duty of the municipal governing body to fix a rate which would permit the utility company to make a *reasonable return on the capital investment* in the business,[10] under an economical and efficient management. The rates are to be prescribed only after notice to the company and a subsequent hearing. The proceeding may be instituted by the city's governing body, or upon petition of the public service corporation, or upon petition of 25 percent of the customers of such company within the city. Failure to determine the rates within 60 days after filing of a petition with the city clerk is deemed a denial of the petition. The statute requires the utility company to provide the governing body of the city access to its books in order that the city may have necessary and proper information whereby the rate determination may be made. If the company fails to provide such access, then the governing body may determine and prescribe rates based on such information and evidence as may be adduced at the hearing. The statute also provides that, where the utility supplies customers outside the city limits, the city may consider the effect of local rates on such outside customers although it may not fix their rates. Where either side is aggrieved by the rate as determined, the statute authorizes a right of appeal to the district courts of the state, with the rates as fixed to remain in force until final determination on appeal.

[10]It is to be noted that investment rather than property values was made the basis for rate fixing. Since the act provides no definition of "capital investment," these words must be taken to mean what they say. See, 16 Minn. L. Rev. 498, 509 to 512.

The legislature possesses plenary power to regulate in this field. It may, by enactment of general laws, modify or withdraw any power entrusted to a city by a home rule charter. Minneapolis St. Ry. Co. v. City of Minneapolis, 229 Minn. 502, 40 N. W. (2d) 353 (appeal dismissed, 339 U. S. 907, 70 S. Ct. 574, 94 L. ed. 1335). The constitutional provisions quoted above clearly establish that the powers given to citizens by virtue of home rule charters are subject to the paramount power of the legislature and may be suspended or abrogated whenever the legislature sees fit to exercise the power reserved to it. State ex rel. Smith v. City of International Falls, 132 Minn. 298, 156 N. W. 249. The police power, in its broadest sense, includes all legislation and almost every function of civil government and, while it is impossible to define its exact limitations, it is generally agreed that it is coextensive with the necessities of the case and the safeguards of the public interest. It embraces regulations designed to promote public convenience and general prosperity or welfare of the people as well as those more specifically aimed at promoting public safety or public health. Blaisdell v. Home Bldg. & Loan Assn. 189 Minn. 422, 249 N. W. 334, 86 A. L. R. 1507, affirmed, 290 U. S. 398, 54 S. Ct. 231, 78 L. ed. 413.[11]

Defendants contend that the case of City of Mt. Pleasant v. Michigan Consol. Gas Co. 325 Mich. 501, 39 N. W. (2d) 49, supports their contention that the 1919 statute does not affect the right to contract for rates under the Waseca charter. But in that case we find that a statute was in effect when the franchise was granted which provided that the commission should have no power *at any time* to change contract rates. That is not the case here, since the 1919

[11]State ex rel. Twin City B. & I. Co. v. Houghton, 144 Minn. 1, 174 N. W. 885, 176 N. W. 159, 8 A. L. R. 585; State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012, affirmed, 273 U. S. 671, 47 S. Ct. 474, 71 L. ed. 832; Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. ed. 923; Camfield v. United States, 167 U. S. 518, 17 S. Ct. 864, 42 L. ed. 260; Sligh v. Kirkwood, 237 U. S. 52, 35 S. Ct. 501, 59 L. ed. 835; Price v. Illinois, 238 U. S. 446, 35 S. Ct. 892, 59 L. ed. 1400; Perley v. North Carolina, 249 U. S. 510, 39 S. Ct. 357, 63 L. ed. 735; Miller v. Schoene, 276 U. S. 272, 48 S. Ct. 246, 72 L. ed. 568.

statute contains no exception of that type. Of course, the legislature could have properly provided that contract rates fixed between a city and utility company would not be affected by the statute, but it did not do so. By providing that the statute was not to be construed to impair the obligation of any *existing* contract or franchise provision, the legislature clearly asserted that the standards set out in the statute were to be applicable to all *future* contracts and franchises. It is therefore clear that the legislature recognized and considered the rule established in Reed v. City of Anoka, 85 Minn. 294, 88 N. W. 981, and St. Cloud Public Service Co. v. City of St. Cloud, 265 U. S. 352, 44 S. Ct. 492, 68 L. ed. 1050, and by this statute intended to establish a state policy as to the standard to be used in fixing rates, whether the rate is fixed by contract or as a result of the rate-making power. Of course, those cases are not applicable here since L. 1919, c. 469, was in full force and effect when the franchise herein was granted under ordinance No. 266. We are not now concerned with what might have been the effect under chapter X of the city charter providing for regulation of rates on a fair and reasonable basis and ordinance No. 266, § 10, if the 1919 statute had not been enacted. We are here dealing with a situation where the state has prescribed its policy as to rate regulation, although the authority, power, and duty to so regulate was delegated to cities of the third and fourth classes.

There are ample authorities supporting plaintiff's contentions. In State ex rel. Quincy Ry. Co. v. City of Quincy, 290 Ill. 360, 125 N. E. 374, the Illinois court held that the general assembly of the state had power to authorize a state commission to change the fares fixed by contract between a municipality and a street railroad company. Mr. Justice Cardozo, speaking for the court in People ex rel. City of New York v. Nixon, 229 N. Y. 356, 128 N. E. 245, held that, where a public services commission law was in effect at the time the city of New York granted a traction company a franchise with a provision for a maximum five cents fare, the commission had power to increase the rate despite the contract and said (229 N. Y. 358, 128 N. E. 245):

"* * * Contracts fixing rates, if made before the enactment of these statutes, were subject at the utmost to the possibility of the exercise by the state of its police power in the future. Contracts made thereafter were subject to a possibility which had become merged in a reality."

As the court stated, once the state declared its standards, the commission, as its delegate, could raise or lower the charges according to the particular need at various times. The court there pointed out that, since the statute was in effect when the municipal contract was made, no obligation of a contract was nullified or impaired. The court emphasized that, although impairment of contract is conceivable when a statute is subsequently enacted, no such impairment is possible when the statute was in force and effect at the time the contract was made since existing statutes are read into future contracts and enter into their terms by implication. As expressed by Mr. Justice Cardozo (229 N. Y. 361, 128 N. E. 247) : "This is merely to give effect to the settled rule that contracts are made in submission to existing legislation." See, Annotations, 3 A. L. R. 730, 9 A. L. R. 1165, 28 A. L. R. 587, and 29 A. L. R. 356.

■ The power to fix rates charged by public utilities rests primarily with the state rather than the municipality, and in the absence of a constitutional provision, the power to fix or regulate such rates may be delegated by the state to municipal corporations. But the grant to a municipality of the power to make an *inviolable contract* for rates must be in clear. and unequivocal terms and the intent to make such grant of power will not be implied. State ex rel. Quincy Ry. Co. v. City of Quincy, *supra;* People ex rel. City of New York v. Nixon, *supra;* 43 Am. Jur., Public Utilities and Services, §§ 86, 88.

The city of Waseca is not possessed of the unlimited authority, power, and duty under the 1919 statute to regulate the gas rate in that city but may only regulate such rate under and in accordance with the terms and provisions of that statute. This authority, power, and duty, as declared by the legislature, is either to raise or lower the rates to the end that the utility company be permitted to make

a reasonable return on the capital investment in the business under an economical and efficient management of the same.

■ Defendants argue that, because plaintiff has accepted the franchise and operated under it, plaintiff is therefore estopped from challenging the validity of the maximum rate provisions of the franchise. But it is well established in this state that a municipality, at least without express legislative authority, cannot deprive itself by contract of any governmental powers delegated to it for public purposes. State ex rel. City of St. Paul v. St. Paul City Ry. Co. 78 Minn. 331, 81 N. W. 200. The city of Waseca has no power or authority to contract for maximum rate schedules since the enactment of L. 1919, c. 469; and since its authority, power, and duty in regard to rate regulation is delegated by the state and limited by the terms of such delegation, the city cannot now urge that plaintiff is estopped to challenge the validity of § 10 of ordinance No. 266. Flynn v. Little Falls Elec. & Water Co. 74 Minn. 180, 77 N. W. 38, 78 N. W. 106; Minneapolis, St. P. R. & D. Elec. Traction Co. v. City of Minneapolis, 124 Minn. 351, 145 N. W. 609, 50 L.R.A. (N.S.) 143; Seitz v. Michel, 148 Minn. 80, 181 N. W. 102, 12 A. L. R. 1060; City of Arcata v. Green, 156 Cal. 759, 106 P. 86; Keefe v. Lexington & Boston St. Ry. Co. 185 Mass. 183, 70 N. E. 37.

■ Defendants contended below that any reconsideration of § 10 of the ordinance would require submission to and approval of the voters. But we are not dealing here with either an extension or an amendment of the ordinance. The 1919 statute clearly delegates rate-making powers to the city of Waseca, and there is no provision therein requiring submission of rate regulations to the voters. The legislature has plenary power to regulate, and the city to whom the power and authority has been delegated comes within these delegated powers as long as it proceeds under and complies with the terms and provisions of the 1919 statute. See, Arkansas Light & Power Co. v. Cooley, 138 Ark. 390, 211 S. W. 664; Johnson County Gas Co. v. Stafford, 198 Ky. 208, 248 S. W. 515.

■ Under § 6 of the ordinance the city council of Waseca has reserved the right to change the rates, and defendants appear to

concede that the city can *lower* the rates when necessary. But defendants contend that the city lacks power to *raise* the rates above the Albert Lea level which § 10 of the ordinance has fixed as the rate ceiling. Under the provisions of the 1919 statute we find no basis for that construction. Section 10 of the ordinance might well be held void for want of mutuality and for absence of any reciprocal rights given to the company. Since there is no lack of mutuality between chapter X of the city charter and the provisions of ordinance No. 266 if § 10 thereof is eliminated, we conclude that the balance of the franchise is not vitiated but will remain in full lawful force and effect, for it obligates the plaintiff to furnish gas but at rates fixed by the city council pursuant to the authority given it by the charter and L. 1919, c. 469. This obligation continues subject, however, to the power and duty of the council to adjust such rates either up or down, such adjustment to be made when it appears that the rates are unfair and unreasonable.

■ Defendants urge that if the 1919 statute be construed as it was by the court below it is invalid as being in violation of Minn. Const. art 4, § 27, which section provides:

"No law shall embrace more than one subject, which shall be expressed in its title."

The title of the 1919 statute is:

"An act to empower any cities of the third and fourth classes in the state of Minnesota, whether existing under a special or general law, or under a home rule charter, to prescribe reasonable rates under which public service corporations supplying gas or current for electric lighting or power purposes * * * may operate within any such city."

The purposes of this provision of the state constitution were stated by Mr. Justice Mitchell in Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923. Because of the difficulty in expressing in one title all the provisions and objects of a legislative plan, this court at an early date held that the provisions should be liberally construed. State v. Cassidy, 22 Minn. 312, 21 Am. R. 765; Johnson v. Harrison,

*supra.* It was never intended that the title should be an index to the law. All that is required is that the act shall not include legislation which by fair intendment cannot be considered germane to the subject expressed in the title. The major object of the constitutional provision is to apprise the members of the legislature of the contents of the act, and if they are fairly apprised, that is sufficient. State v. Cassidy, *supra;* State v. Evans, 154 Minn. 95, 191 N. W. 425, 27 A. L. R. 1165; Lyman v. Chase, 178 Minn. 244, 251, 226 N. W. 633, 842.

Defendants' contention is that the title embraces more than one subject. It appears to us, and we so hold, that both the title and act contain only one subject, viz., the delegation of rate-fixing powers, gas or electric, to cities of the third and fourth classes in the state of Minnesota with such authority, powers, and duties as the legislature deemed essential to the exercise thereof, and that any other provisions contained in the act are ancillary or incidental to that one subject. Blaisdell v. Home Bldg. & Loan Assn. 189 Minn. 422, 249 N. W. 334, affirmed, 290 U. S. 398, 54 S. Ct. 231, 78 L. ed. 413; C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 297 N. W. 9.

Some of the assignments of error have been submitted without argument or citation of authority and therefore are deemed to be waived, and others are not now important or controlling in view of the conclusions which we have reached in this decision. It is our considered opinion that § 10 of ordinance No. 266 is wholly inconsistent with the other provisions of the ordinance, void for lack of mutuality, and invalid because it must yield to chapter X of the city charter and the paramount law under the provisions contained in L. 1919, c. 469.

The order of the lower court is affirmed.

Affirmed.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.