## AUTOMATIC ALARM CORPORATION v. ALECK E. ELLIS, d.b.a. SMOKY POINT CAFE.

99 N. W. (2d) 54.

November 6, 1959—No. 37,805.

*Robins, Davis & Lyons* and *Thomas D. Feinberg,* for appellant. *Kempf & Ticen,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for liquidated damages arising out of the alleged breach of a written contract between plaintiff and defendant for the installation, maintenance, and rental of a burglar alarm system which was furnished and installed by plaintiff for defendant in the latter's cafe at 7800 Cedar Avenue in Richfield in December 1955. Subsequent to the installation of the system, defendant's premises were condemned for highway purposes under eminent domain proceedings instituted by the state and pursuant thereto in June 1957 defendant surrendered

possession of the property to the state. Since then defendant has not paid plaintiff the rental payments for the system required by the agreement, and in consequence plaintiff instituted the present action for the liquidated damages provided for therein.

The trial court made findings and ordered judgment in favor of defendant, and from the judgment subsequently entered, this appeal is taken. The case was submitted on a stipulation of facts which included the following:

"On December 2, 1955, an agreement was entered into by and between the parties hereto, a copy of which is attached and made a part of the complaint on file in this matter, whereby plaintiff, Automatic Alarm Corp., contracted with said Smoky Point Cafe to install and keep in repair for five (5) years from and after the date of said contract an automatic alarm system. The agreement also specifically provided that if the subscriber, namely, Smoky Point Cafe, transferred its place of business, the installation of the automatic alarm system at said new place of business would be relayed at the expense of the Subscriber."

The attached contract contained the following provisions:

"The undersigned [Aleck E. Ellis], doing business under the trade name of Smoky Point, * * * agrees, subject to the terms and conditions hereinafter stated, to employ the Automatic Alarm Corp., hereinafter called A. A. C., to install a local burglar alarm system, maintain the same, and furnish Burglar Alarm Service at No. 7800 Cedar Avenue and will pay $151.00 upon completion of the installation, both on account of the cost of wiring, *and further sum of $8.00 per month, quarterly in advance for the duration of the guarantee period from the date hereof * * *.*

\* \* \* \* \*

"*The A. A. C. will furnish the apparatus and wiring necessary to equip that portion of the Subscriber's premises which is referred to in the annexed schedule, and will, at its own expense, maintain and repair said equipment whenever required by ordinary wear and tear.* The Subscriber will notify A. A. C. immediately of the need of repairs. This

guarantee and this agreement shall continue for a period of five years from the date hereof and the current year, * * *.

"1. *All apparatus, including batteries, bells, springs, signs, frames, and other appliances of the installation shall be the property of the A. A. C.,* and the Subscriber agrees that no apparatus or appliances not approved by A. A. C. shall be attached to or used in connection therewith. *Upon the termination of this agreement, or discontinuance of the service, no matter from what cause, the A. A. C. shall have the right to enter the premises and remove any of its equipment therefrom*

"2. *If the Subscriber transfers his premises,* the installation will be relayed at his expense. * * *

"3. Should default be made in any of the aforementioned payments, * * * then * * * all charges accrued to date shall immediately become due and payable, and in addition thereto there shall at once become due and payable to A. A. C. a sum equivalent to seventy-five per cent of the remaining *rental* payments to be paid by the Subscriber until the expiration of the term hereof, together with all costs of collection, the same, including reasonable attorney's fees which said amount shall represent liquidated damages incurred by A. A. C. for the executed work, installation of materials, cost of removal, wear, tear and other items of loss sustained by reason of the breach of this agreement." (Italics supplied.)

Based upon the stipulation, the trial court found in part as follows:

"4) That the real estate referred to in said contract located at 7800 Cedar Avenue and the building located thereon were prior to June of 1957 condemned by the State of Minnesota and pursuant to said condemnation proceedings the defendant herein surrendered possession of said premises to the State of Minnesota during the month of June 1957.

"5) That it became impossible for defendant to perform said contract because of the aforesaid condemnation proceedings instituted and carried out by the State of Minnesota."

On appeal plaintiff contends that the state's exercise of its power of eminent domain did not excuse defendant from the monthly payments required by the contract, or from paying the liquidated damages pro-

vided for therein; and that the doctrine of "impossibility of perform-ance" has no application since the agreement contemplated the pos-sible transfer of defendant's business from 7800 Cedar Avenue and made provision accordingly.

■ Determination of this controversy is dependent upon the lan-guage of the agreement as above set forth. Plaintiff concedes that in the performance of a contractual obligation the unforeseen exercise of governmental authority rendering performance impossible will excuse the promisor's obligation in connection therewith. Village of Minneota v. Fairbanks, Morse & Co. 226 Minn. 1, 31 N. W. (2d) 920; Orme v. Atlas Gas & Oil Co. 217 Minn. 27, 13 N. W. (2d) 757; Powers v. Siats, 244 Minn. 515, 70 N. W. (2d) 344; Western States Utilities Co. v. City of Waseca, 242 Minn. 302, 65 N. W. (2d) 255. In the instant case it is clear that the exercise of the power of eminent do-main by the State of Minnesota, which resulted in the condemnation of defendant's premises at 7800 Cedar Avenue, was not contemplated by the parties at the time the contract was executed.

■ Plaintiff contends, however, that because the contract contains the provision that "If the Subscriber [defendant] transfers his prem-ises, the installation will be relayed at his expense," the principles above set forth can have no application since the quoted language must mean that the continued existence of the structure and the con-tinued operation of the business at 7800 Cedar Avenue were not re-garded by the parties as integral parts of the contract. In this we must disagree with plaintiff. Close scrutiny of this document in our judgment reveals nothing which would lead to this conclusion, or to the conclusion that the parties contemplated that defendant would be required to move to a new location in the situation which developed when the state ac-quired his property. While it is true that plaintiff covenanted that *if* defendant should so change his location plaintiff would then relay and install the system at the new location, this provision could not reasonably be construed to mean that in the event of condemnation proceedings terminating defendant's ownership of the structure in which his business was located and making it unlawful to continue operations there de-fendant *must* then transfer his business to some other location regard-

less of cost or convenience or otherwise be obligated to perform the obligations of the contract now in controversy.

Accordingly, we must conclude that after it became unlawful for either plaintiff or defendant to continue business at 7800 Cedar Avenue defendant's obligation to make the rental payments required by the contract was excused. This viewpoint is strengthened by consideration of paragraph 1 of the contract which provides that "Upon * * * discontinuance of the service, no matter from what cause, * * * [plaintiff] shall have the right to enter the premises and remove any of its equipment therefrom." Under this provision and under the applicable law, it is clear that when the state took possession of the premises at 7800 Cedar Avenue plaintiff not only had the right but the legal obligation to remove its equipment from the condemned premises. When this transpired, it was no longer in a position to perform its part of the rental agreement, and it would follow that defendant would no longer be required to pay the specified rental for equipment which validly could not be furnished at the location specified.

Affirmed.